UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
CASE NO. 2:11-CV-42

VIDA CODY,                                            )
                                                     )
                Plaintiff,                           )
        v.                                           )
                                                     )
SWAIN COUNTY, NORTH                                  )
CAROLINA, KEVIN KING, in his                         )
official and individual capacity,                    )
PHILLIP CARSON, in his official and                  )     **DEFENDANTS' EXHIBIT LIST**
individual capacity, ROBERT WHITE,                   )
in his official and individual capacity,             )
DAVID MONTEITH, in his official                      )
and individual capacity, STEVE                       )
MOON, in his official and individual                 )
capacity, and DONNIE DIXON, in his                   )
official and individual capacity,                    )
                                                     )
                Defendants.

EXHIBIT 2 TO BRYSON DECLARATION:    PUBLIC    OFFICIALS'
LIABILITY COVERAGE

### SECTION V
### PUBLIC OFFICIALS LIABILITY
### CONTRACT DECLARATIONS

Participant **SWAIN COUNTY**

Contract Number **LP-SW-086-10**

Contract Period **July 1, 2010 to July 1, 2011**

Effective Time **12:01 A.M., Eastern Daylight Time**

| SCHEDULE OF COVERAGES AND LIMITS | |
|---|---|
| COVERAGE | LIMIT |
| Coverage Agreement 1, Each Wrongful Act | $2,000,000 |
| Coverage Agreement 1, Each Person | $500,000 |
| Coverage Agreement 2, Contract Period Aggregate | $1,000,000 |

| DEDUCTIBLE | |
|---|---|
| Coverage Agreement 1, Each Wrongful Act | $5,000 |
| Coverage Agreement 2, Each Occurrence | $5,000 |

## SECTION V: PUBLIC OFFICIALS LIABILITY COVERAGE

The Pool agrees with the Participant in consideration of the payment of the contribution and in reliance upon the statements in the application and subject to the limits of liability, exclusions, conditions, and other terms of this Contract as follows:

## A. Coverage Agreements

### 1. Public Officials Coverage

The Pool will pay on behalf of the Covered Person all sums which the Covered Person shall become legally obligated to pay as money damages for a Wrongful Act occurring while a Covered Person is acting within the course and scope of his/her duties, during the coverage period shown on the Contract Declarations.

This contract does not include recovery for punitive damages, attorney's fees, treble damages, fines, penalties, and multiplied damages; however, defense will be provided for claims alleging such damages.

### 2. Wrongful Sexual Occurrence Limitation Agreement

The Pool will pay damages for Personal Injury and/or Bodily Injury as a result of an Occurrence arising from Sexual Harassment, sexual molestation, sexual exploitation or sexual injury, where it is alleged that the Covered Person was negligent in hiring, training, or supervision practices.

This contract does not include recovery for punitive damages, attorney's fees, treble damages, fines, penalties, and multiplied damages; however, defense will be provided for claims alleging such damages.

The Most the Pool will pay for damages is limited to:

$500,000.00 per person Sexually Harassed, sexually molested, sexually exploited, or sexually injured, regardless of the number of incidents involving that person, number of Covered Persons involved, or number of claimants or claims made. For purposes of this coverage limit, any Wrongful Act which results from a claim under this limitation is also included in this $500,000.00 per person limit.

$1,000,000.00 Aggregate per Contract Period.

Multiple incidents of Sexual Harassment, sexual molestation, sexual exploitation, or sexual injury to one person, whether consisting of one or any combination among these, shall be deemed to be one Occurrence and shall be subject to the coverage and limits in effect at the time of the first incident even if a portion of said incidents take place after the Contract Period.

Coverage shall NOT apply:

a.  On behalf of any person who personally takes part in inflicting Sexual Harassment, sexual molestation, sexual exploitation, or sexual injury upon another person; or

b.  On behalf of any person who remains passive upon gaining knowledge of any alleged Sexual Harassment, sexual molestation, sexual exploitation, or sexual injury committed by a

Covered Person.

When claims of Sexual Harassment are alleged against a Covered Person under this Section, a defense shall be provided by the Pool to the accused, but no coverage is provided for any sums the Covered Person may become legally obligated to pay or for any sums or costs other than the provision of a defense.

**B.  Immunity**

The parties to this Contract intend for no coverage to exist under Section V (Public Officials Liability Coverage) as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law.  It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

**C.  Defense Costs; Charges and Expenses**

Regarding the coverage provided by Section V (Public Officials Liability Coverage) of this Contract, the Pool shall, in addition to the Limits of Liability:

1.  Have the right and duty to defend any action or suit seeking money damages brought against the Covered Person alleging a Wrongful Act under Section V (Public Officials Liability Coverage) A. (Coverage Agreements) 1. (Public Officials Coverage) and/or a Wrongful Sexual Occurrence under Section V (Public Officials Liability Coverage) A. (Coverage Agreements) 2. (Wrongful Sexual Occurrence Limitation Agreement), even if such action or suit is groundless, false, or fraudulent; but, the Covered Person shall not admit liability for or settle any claim or incur any cost or expense without the written consent of the Pool, and the Pool shall have the right to make such investigation of the allegation(s) and conduct negotiations and enter into such settlement of any claim or suit as the Pool deems necessary.

2.  Pay all reasonable expenses, other than salaries of any Covered Person incurred by the Covered Person at the Pool's request.

**D.  Territory**

Section V (Public Officials Liability Coverage) of this Contract shall apply anywhere in the world with respect to the activities of any Covered Person permanently domiciled in the United States of America though temporarily outside the United States of America, its territories and possessions, or Canada, provided the original suit for damages is brought within the United States of America, its territories or possessions, or Canada.

**E.  Pool's Limit of Liability**

As applicable under Section V (Public Officials Liability Coverage) of this Contract the total liability of the Pool for any one Wrongful Act under A. Coverage Agreements 1. involving one Participant will be $2,000,000.00; except where other liability and/or coverage sub-limits apply; then the Pool's liability will also be limited to the applicable sub-limit.

The Pool's liability for any one Wrongful Act under A. Coverage Agreements 1. involving one Participant will be limited to $2,000,000.00 regardless of the number of claimants or claims made or number of Covered Persons involved whether or not covered in one or more than one capacity under this Contract or the contract of other Pool Participants.

All claims arising, directly or indirectly, out of a series of continuous, repeated, or interrelated acts or a single cause or series of related causes shall be considered as one Wrongful Act under A. Coverage Agreements 1. regardless of the period of time or area over which such Wrongful Act.

The coverage provided in Section V (Public Officials Liability Coverage) is provided to the exclusion of any coverage otherwise available in this contract. In no case may the coverage provided by Section V (Public Officials Liability Coverage) combine with any other section to increase the per Wrongful Act or Occurrence limit of liability of $2,000,000.00 as referenced above.

The parties to this Contract intend for no coverage to exist under Section V (Public Officials Liability Coverage) as to any claim for which the Covered Person is protected by sovereign immunity and/or governmental immunity under North Carolina law. It is the express intention of the parties to this Contract that none of the coverage set out herein be construed as waiving in any respect the entitlement of the Covered Person to sovereign immunity and/or governmental immunity.

## F. Deductible

Any amount payable under Section V (Public Officials Liability Coverage) of this Contract shall be reduced by the deductible amounts stated in the Section V (Public Officials Liability Coverage) Declarations. This deductible shall apply for each Wrongful Act and/or Occurrence under Section V (Public Officials Liability Coverage) and shall be borne by the Participant. Defense costs are included within the deductible.

All claims against any Covered Person arising out of a series of continuous, repeated, or interrelated acts or a single cause or series of related causes shall be considered as one Wrongful Act and/or Occurrence and subject to one deductible, regardless of the period of time or area over which such Wrongful Act and/or Occurrence happens.

## G. Exclusions

Section V (Public Officials Liability Coverage) of this Contract does not apply to any claim as follows:

1.  any claim, demand, or cause of action against any Covered Person as to which the Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law;

2.  seeking the return of any profit, advantage, gain, or remuneration for which the Covered Person was not legally entitled; however, the Covered Person shall be defended under the terms of this Contract unless a judgment or final adjudication established such lack of legal entitlement;

3.  brought about or contributed to by the fraudulent, dishonest, or criminal behavior of any Covered Person, however, notwithstanding the foregoing, the Covered Person shall be protected under the terms of the Contract as to any claims upon which suit is brought by reason of any alleged dishonesty on the part of the Covered Person unless a judgment or other final adjudication thereof adverse to them shall establish that acts of active and deliberate dishonesty committed by the Covered Person with actual dishonest purpose and intent were material to the cause of action so adjudicated;

4.  any claims for injunctive or other non-monetary relief;

5.  for Bodily Injury;

6.  for loss, damage to or destruction of any tangible property, or the loss of use thereof by reason of the foregoing;

7.  for Personal Injury;

8. arising from a publication or utterance in the course of or related to advertising, broadcasting, or telecasting activities conducted by or on behalf of the Covered Person;

9. arising from inverse condemnation and/or adverse possession;

10. arising from strikes, riots, or civil commotions;

11. for Bodily Injury, Personal Injury or Property Damage expected or intended by a Covered Person or arising from the intentional, willful, malicious or criminal conduct of any Covered Person;

12. arising from:

   a. the Contamination of any indoor or outdoor Environment by Pollutants that are introduced or present at any time, anywhere, in any way; or

   b. any Bodily Injury, Personal Injury, Property Damage, costs or other loss or damage arising out of such contamination, including but not limited to, cleaning up, remedying, or detoxifying such contamination;

   As used in this exclusion, the following terms will have the following meanings:

   "Contamination" means any unclean or unsafe or damaging or injurious or unhealthful condition arising out of the presence of pollutants, whether permanent or transient in any Environment.

   "Environment" includes any person, any manmade object or feature, including the interior of buildings or structures, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air, and any other feature of the earth or its atmosphere, whether or not altered, developed, or cultivated, including, but not limited to any of the above, owned, controlled, or occupied by the Covered Person.

   "Pollutants" means sound and any solid, liquid, gaseous, bacterial or chemical irritant or contaminant, whether or not a naturally occurring substance, including smoke, vapors, soot, fumes, acids, alkalis, molds, fungi, mycotoxins, chemicals, thermal pollutants and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

13. arising from any Covered Person's activities in a fiduciary capacity regarding employee benefit plans;

14. arising directly or indirectly from the activities of a Medical Professional whether paid or unpaid, by any "Participant" or "Covered Person;

   For purposes of this exclusion, Medical Professional means anyone in any way involved in the practice of medicine, including, but not limited to, physicians, surgeons, osteopath, chiropractors, anesthesiologist, dentist, psychiatrist, psychologist, nurses, paramedics, emergency medical technician, first aid attendants, pharmacists or any other health care practitioner of any kind.

15. arising out of breach of contract except as assumed under Mutual Aid Agreements entered into pursuant to North Carolina law;

16. arising out of the operation or activities of any school or school district, hospital or health clinic, housing authority or transit authority, airports, gas and utility companies; however, this exclusion does not apply to the operation of a health clinic owned by a health department which has paid a premium to the Pool to be included as a Participant for coverage under this Contract, or to any transit authority named as the Participant, or included on the application;

17. any claims, demands, or causes of action brought by a Covered Person against any other Covered Person;

18. any claims, demands, or causes of action brought under the Fair Labor Standards Act or the Family Medical Leave Act;

19. arising out of the activities of any Participant or those employed by a Participant, regardless of department assigned, who is designated as dog warden, animal control officer, animal control official or other designation that may be used and whose responsibility includes enforcing city, county, and state laws governing the care and keeping of animals, including the impoundment, care and disposal of domestic and wild animals as appropriate. Coverage for such persons as provided in Section VI (Law Enforcement Liability Coverage) shall be exclusive to any other coverage provided by the Pool;

20. to Bodily Injury or Property Damage including medical payments resulting from the Hazardous Properties of Nuclear Material, if:

   a. the Nuclear Material:

      (1) is at any Nuclear Facility owned by or operated by or on behalf of the Participant; or

      (2) has been discharged or dispersed therefrom; or

   b. the Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported, or disposed of by or on behalf of the Participant; or

   c. the Bodily Injury or Property Damage arises out of the furnishing by the Participant of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any Nuclear Facility, but if such Facility is located within the United States of America, its territories or possessions, or Canada, exclusion (c) applies only to Property Damage to such Nuclear Facility and any property there at.

As used in this exclusion:

"Hazardous Properties" includes radioactive, toxic, or explosive properties;

"Nuclear Material" means Source Material, Special Nuclear Material, or By-product Material;

"Source Material", "Special Nuclear Material", and "By-product Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor;

"Waste" means any waste material (1) containing By-product Material and (2) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of Nuclear Facility under paragraph a or b below;

"Nuclear Facility" means:

   a. any Nuclear Reactor; or

b. any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium; (2) processing or utilizing Spent Fuel; or (3) handling, processing or packaging Waste; or

c. any equipment or device used for the processing, fabricating, or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the Participant at the premises, where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

d. any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of Waste, and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property Damage" includes all forms of radioactive contamination of property.

21. to loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of Fungus, wet or dry rot or bacteria;

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

22. any claims arising from:

a. procurement of goods or services;

b. construction contracts;

c. architectural or engineering contracts; or

d. the process of bidding or awarding contracts.

23. to any claim or action arising out of or resulting in any way from the use of any medically prescribed product not approved by the FDA *including, but not limited to, any product* obtained through a foreign country;

24. Under Section V A. 1. for any claim arising from sexual abuse, sexual molestation, sexual exploitation or sexual injury;

25. Claims Covered Under any Other Coverage Part of this Contract; or

26. Any liability arising from the purchase, sale, issuance or distribution or offer to purchase or sell any debt or equity securities or other investments of any type, including but not limited to any debt financing engaged in by the Covered Person.

## H. **General Conditions**

1. Participant's/Covered Person's duties in the event of Wrongful Act, Claim or Suit under Section V

a. Notice of Loss

The Participant shall, immediately, or as soon as practicable, report in writing to the Pool, or its service provider, every incident or Wrongful Act and/or Occurrence that may result in a liability claim. The Participant is required to provide notice to the Pool with specific information concerning the date, time, place and individual(s) involved in the incident or Wrongful Act and/or Occurrence that may result in a claim. The Participant is required to provide a narrative detailing the facts and circumstances of the incident or Wrongful Act and/or Occurrence, known to the Participant, at the time of executing the notice to the Pool.

The Covered Person shall cooperate with the Pool and its designee(s) concerning the litigation or the anticipated litigation of any claim. Pursuant to the Pool's request and payment by the Pool of reasonable expenses, the Covered Person shall attend hearings, trials, and other proceedings, and will assist in effecting settlements, in securing and providing evidence, in attaining the attendance of witnesses and fully cooperate with the Pool and its designee(s) with regard to the defense of the claim.

If a claim is made, or suit is brought against the Covered Person, the Participant shall immediately forward to the Pool every demand, notice, summons or other process received by the Participant, or its representative.

The Pool is responsible for providing legal representation to adjudicate claims. The Pool, or its designee, retains the sole authority to adjudicate claims. All decisions regarding claims shall be made by the Pool, or its designee, including the decision to proceed to trial or to not proceed to trial, appeal or not to appeal, or to settle or not to settle a claim.

No Covered Person shall pay a claim, or a claims-related expense, without the prior approval of the Pools' Board of Trustees, or its designated service provider. Any Covered Person making such a voluntary payment or entering into an agreement to pay will be responsible for the claim and any expenses paid and/or committed, including the cost of a legal defense.

b. Payment of Loss

All adjusted claims will be due and payable no later than sixty (60) days after presentation and acceptance of the claim by the Pool or its appointed representative.

c. Loss Payable

The Pool will adjust each loss of the Participant. The Pool will pay the adjusted covered loss to the Participant, or its order, or other appropriate person whose receipt will constitute a full release of liability under this Contract for such loss.

2. Action against the Pool

Under Section V (Public Officials Liability Coverage) of this Contract, no action shall lie against the Pool unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Contract, and until the amount of the Covered Person's obligation to pay shall have been determined either by judgment against the Covered Person after actual trial or by written agreement of the Covered Person, the claimant, and the Pool.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Contract to the extent of the coverage afforded by this Contract. No person or organization shall have any right under this Contract to join the Pool as a party in any action against a Covered Person to determine a Covered Person's liability, nor shall the Pool be impleaded by a Covered Person or its or his legal representative. Bankruptcy or insolvency of a Covered Person shall not relieve the Pool of any of its obligations hereunder.

3. Other Coverage

Section V (Public Officials Liability Coverage) of this Contract shall be excess coverage over any other valid or collectible coverage.

4. Cancellation

Section V (Public Officials Liability Coverage) of this Contract shall be canceled as provided in the General Provisions Section of this Contract.

5. Subrogation

In addition to the subrogation provisions of the General Provisions Section of this Contract, the following shall apply in Section V (Public Officials Liability Coverage).

The Pool will have no rights of subrogation against any person or entity, which is a Covered Person under Section V (Public Officials Liability Coverage) of this Contract; or against any other person or entity, which the Participant has waived its right of subrogation against in writing before the time of loss.

## I. **Definitions**

1. "Bodily Injury" means bodily injury, sickness or disease sustained by a person including death as a result of an injury, sickness or disease at any time.

2. "Covered Persons" means

   a. The Participant;

   b. a person who is a lawfully elected or appointed official of the Participant while acting under the jurisdiction of the Participant or within the course and scope of his/her authority or apparent authority, express or implied, but only with respect to his/her liability while acting within the course and scope of his/her authority;

   c. any employees of the Participant while acting within the course and scope of his/her duties for claims brought against him/her in his/her individual capacities;

   d. a member of a commission, board, or other unit operating by and under the jurisdiction of the Participant and within apportionment of the total operating budget, and included on the application, provided that the coverage afforded shall not extend to any of the following boards, commissioners, or units unless specifically endorsed hereon or specifically included on the application: schools, airports, transit authorities, hospitals and health clinics, municipally owned gas or electric companies, housing authorities or fire stations; however, coverage does apply to the board of a health clinic owned by a health department which has paid a premium to the Pool to be included as a Participant for coverage under the contract, or to any transit authority named as the Participant or included in the application.

   e. any person who performs a service on a volunteer basis for the Participant and under its direction and control;

   f. any person while providing services to the Participant under any mutual aid or similar agreement, or while acting as an agent for the Participant;

3. "Damages" whenever used in this Contract means compensatory damages only and does not include fines or penalties.

4. "Occurrence" means an accident, neither intended nor expected, or a happening or event or a continuous or repeated exposure to conditions which results in Bodily Injury, Personal Injury, Advertising Injury or Property Damage during the Contract Period. All personal injuries to one or more persons and/or Property Damage arising out of an accident or a happening or event or continuous or repeated exposure to conditions shall be deemed one Occurrence.

5. "Participant" means the covered political subdivisions named in the Section V (Public Officials Liability Coverage) Declarations Page.

6. "Personal Injury" means injury other than Bodily Injury arising out of one or more of the following offenses:

   a. False arrest, false imprisonment, wrongful eviction, wrongful entry, detention, malicious prosecution, invasion of rights of privacy, libel, slander, or defamation of character, publication of disparaging materials, and assault and battery;

   b. Mental injury, mental anguish, humiliation, erroneous service of civil papers, violation of civil rights, disparagement of property and discrimination;

   c. Advertising injury;

7. "Property Damage" except in the Nuclear Exclusion means damage or destruction to loss of property, excluding, however, damage to property owned by the Participant. Property Damage also means loss of use of property that is not physically injured.

8. "Retaliation" means a wrongful act of the Participant in response to any of the following activities:

   a. A political affiliation;

   b. The actual or attempted exercise by an employee of the Participant of any right that such employee has under law;

   c. The disclosure by an employee or volunteer to a superior or any outside authority of any act by the Participant which violates any rules or regulations that govern the Participant.

9. "Sexual Harassment" means unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature that are made a condition of employment, are used as a basis for employment decisions, or create a work environment that is hostile, intimidating or offensive or that interferes with performance.

10. "Wrongful Act" means any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty including misfeasance, malfeasance, or nonfeasance by a Covered Person while acting within the scope of his/her professional duties or Pool approved activities. "Wrongful Act" does not include any activity described in Section V (Public Officials Liability Coverage) A. (Coverage Agreements) 2. (Wrongful Sexual Occurrence Limitation Agreement).

## VIOLATION OF COMMUNICATION OR INFORMATION LAW EXCLUSION ENDORSEMENT

This policy is amended to include the following exclusion:

### Violation of Communication or Information Law

This insurance does not apply to any liability arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, which prohibits or limits the sending, transmitting or communicating of material or information.

It is understood that to the extent any coverage may otherwise be available under this policy or any of its endorsements, the provisions of this exclusion will supersede.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

Effective Date of this Endorsement: 7/1/2010